## In re DEVONIAN MINERAL SPRING CO.

(District Court, N. D. Ohio, E. D.   December 24, 1920.)

No. 7301.

**1. Bankruptcy �köö16—Domicile of corporation in district where incorporated and doing business.**

Where a corporation is one organized under the laws of a state in which its voluntary petition for bankruptcy is filed, and the district in which the petition is filed is the only one in which it has an office or does business, it has a domicile in such district.

**2. Bankruptcy �köö16—"Principal place of business" in district, where corporation incorporated and carrying on business.**

Where a mineral spring water company was incorporated in Ohio, in which its spring and producing plant was located, and where it conducted its banking and official business, and held its directors' and stockholders' meeting, and its articles named as its principal place of business an Ohio city, and it had an office and sold its products and capital stock in Kentucky, its "principal place of business," under Bankruptcy Act, § 2, subd. 1 (Comp. St. § 9586), was in Ohio, not Kentucky.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Principal Place of Business.]

**3. Bankruptcy ⊦köö16—Principal place of business presumptively the place named in incorporation papers.**

Under Bankruptcy Act, § 2, subd. 1 (Comp. St. § 9586), when the articles of incorporation name a place as the principal place of business of a corporation, the burden is on the petitioning creditors to show it is elsewhere.

**4. Bankruptcy ⊦köö18—"Parties in interest" and "greatest convenience" defined.**

Under General Order 6 (89 Fed. v, 32 C. C. A. ix), respecting transfer of bankruptcy proceedings for the "greatest convenience" of "parties in interest," the term "parties in interest" includes not only general creditors, but prior and secured creditors as well, and also the bankrupt and every other party, whose pecuniary interest is affected by the proceedings, and the "greatest convenience" depends on all the circumstances— proximity of creditors of every kind to the court, proximity to the court of bankrupts and witnesses necessary to proper administration, the location of assets, etc.

**5. Bankruptcy ⊦köö18—Convenience held not promoted by transfer.**

Where, in the district of voluntary adjudication there were practically all the assets of the bankrupt corporation, its official headquarters, its books and records, and there was pending in the state court in such district an action to foreclose its mortgages on the bulk of its assets, *held*, that the proceedings would not be transferred to the federal court in another state, where involuntary petition in bankruptcy was pending against it, although a majority in amount and number of general creditors lived there, and also the majority of stockholders and many witnesses as to claims.

In Bankruptcy. In the matter of the Devonian Mineral Spring Company, bankrupt. On petitions to set aside voluntary bankruptcy adjudication, and for an order transferring the proceeding. Petitions denied.

⊦köö For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

D. J. Nye, of Elyria, Ohio, for bankrupt.

Lawrence C. Spieth, of White, Johnson, Cannon & Spieth, of Cleve-- land, Ohio, R. M. Holland, of Owensboro, Ky., and Ernest Rowe, of Rowe & Rowe, of Owensboro, Ky., for Kentucky creditors.

WESTENHAVER, District Judge. This matter is before me upon two petitions, one of certain stockholders and one of certain creditors of the bankrupt company, for an order setting aside an adjudication of bankruptcy heretofore made by this court upon a voluntary petition filed by the Devonian Mineral Spring Company, and, upon such adjudication being set aside, for an order transferring this proceeding to the United States District Court for the Western District of Kentucky. To these petitions the company filed an answer praying for dismissal of said petition.

For convenience the grounds alleged for the relief desired, in the two petitions will be considered together. Briefly the grounds set out for the relief prayed for are: (1) That there is pending in the District Court for the Western District of Kentucky an involuntary petition in bankruptcy against the bankrupt company. (2) That on December 3, 1920, a voluntary petition was filed by the company in this court and adjudication of bankruptcy had; that said voluntary petition was filed without proper authority, in that the majority of stockholders, who reside in Kentucky, were not notified of the intention of the directors to authorize the filing of such petition, nor of a meeting of stockholders to consider such action. (3) That the meeting of the board of directors of the company at which it was determined to file the voluntary petition, was attended by only three directors, one of whom is liable for a certain claim asserted as a lien against the company by a Lorain bank, and another of whom is a brother of a man who is asserting a preferred claim against the company.

It is alleged that the director first mentioned and the brother of the other are denying their liability and are denying their execution of a contract releasing the company and evidencing their own liability; that the purpose of filing the voluntary petition was to render it difficult and inconvenient for the petitioners to attend the trial and contest the validity of said claims; that as many as 14 of the petitioning stockholders are important witnesses necessary to establish the invalidity of said two claims as against the company; that a majority of the stockholders (naming them) of the company live in the western district of Kentucky; that a majority of the creditors (naming them), with claims totaling approximately $20,000, reside in or are represented by attorneys residing in said district of Kentucky. There are other allegations tending to show that it would subserve the convenience of the creditors named if the proceedings in bankruptcy were transferred to the Kentucky court, among them that the executive office of the company, where all its business was done, was at Owensboro, Ky.

The answer of the company alleges: (1) That Kentucky is not the home, domicile, or principal place of business of the company. (2) That the company is an Ohio corporation; that by its charter its office and principal place of business is at Lorain, Ohio; that all of its real

estate, mineral springs, and the greater portion of personal property are now and always have been located at Lorain, Ohio; that its principal office, its principal place of business, its books, records, and papers always have been at Lorain, Ohio; that its directors' and stockholders' meetings have always been held and its official business conducted in Lorain, Ohio; that the owners of a majority of its stock, 846 shares, have always been residents of Lorain county; and that the majority of its directors are residents of Lorain county. (3) That the company never authorized the establishment of an office, domicile or place of business anywhere other than in Lorain, Ohio, and that the only business transacted at the company's office at Owensboro was for the sale of the mineral water produced by the company. (4) That the three directors attending the meeting at which the voluntary petition was authorized were the only directors then qualified to act, and were besides the owners of a majority of the stock of the company. (5) That there is an action pending in the courts of Lorain county, brought prior to the involuntary petition filed in Kentucky, in which A. T. Grills (brother of one of the directors) is the plaintiff, and the company and one other director mentioned by the petitioners, as well as two others, including the Lorain bank, are defendants. This was an action brought to foreclose an alleged mortgage for $6,500 upon the real estate of the company, and in which the bank by cross-petition asks for a foreclosure of a mortgage owned by it upon the same property for $4,500. (6) That the company does not deny the existence of the contract alleged by petitioners to release the company from liability for two claims described. (7) Admitting that there are some creditors and stockholders residing in Kentucky, every other allegation of the petition is denied, and it is claimed that convenience dictates a denial of the petition for transfer.

The only question for determination is the right of petitioners to have the proceedings transferred to the District Court of Kentucky. So far as the right to set aside the adjudication of bankruptcy is involved, it is only incidental to the former. This renders it unnecessary to consider the validity of the action by the board of directors in filing the voluntary petition. Petitioners' claim for an order transferring this proceeding rests upon section 32 of the Bankruptcy Act (Comp. St. § 9616) and General Order 6 (89 Fed. v, 32 C. C. A. ix). Section 32 provides that when "petitions are filed against the same person * * * in different courts of bankruptcy each of which has jurisdiction, the cases shall be transferred" to the court, "which can proceed with the same for the greatest convenience of parties in interest."

General Order VI:

"In case two or more petitions shall be filed against the same individual in different districts, the first hearing shall be had in the district in which the debtor has his domicile, and the petition may be amended by inserting an allegation of an act of bankruptcy committed at an earlier date than that first alleged, if such earlier act is charged in either of the other petitions; and in case of two or more petitions against the same partnership in different courts, each having jurisdiction over the case, the petition first filed shall be first heard and may be amended by an insertion of an allegation of an earlier act of bankruptcy than that first alleged, if such earlier act is charged in either of the other petitions; and in either case, the proceedings upon the other petitions may be stayed until an adjudication is made upon the petition

272 F.—34

first heard; and the court which makes the first adjudication of bankruptcy shall retain jurisdiction over all proceedings therein until the same shall be closed. In case two or more petitions shall be filed in different districts by different members of the same partnership for an adjudication of the bankruptcy of said partnership, the court in which the petition is first filed, having jurisdiction, shall take and retain jurisdiction over all proceedings in such bankruptcy until the same shall be closed; and if such petitions shall be filed in the same district, action shall be first had upon the one first filed. *But the court so retaining jurisdiction shall, if satisfied that it is for the greatest convenience of parties in interest that another of said courts should proceed with the cases, order them to be transferred to that court.*" (The underscoring is mine.)

It is to be noted that the first sentence of this order refers merely to the order in which several petitions filed against an individual in different districts should be heard. This leaves out entirely the question of jurisdiction. The petition filed in the district in which the debtor has his domicile, must be first heard. The court of the debtor's domicile having made an adjudication, it "shall retain jurisdiction over all proceedings therein until the same shall be closed." In the last sentence it is provided that the court retaining jurisdiction shall, "if satisfied that it is for the convenience of parties in interest that another of said courts" (meaning, of course, another court *having jurisdiction,* if a petition is *pending* in such a court) "should proceed with the cases, order them to be transferred to that court."

[1] In the case before us there is an involuntary petition pending in the District Court of Kentucky. While so pending, a voluntary petition was filed in this district. It being admitted that the bankrupt company is a corporation organized under the laws of Ohio, and this district being the only one in which it had an office or did business, clearly "the debtor has his domicile" in this district. In re Elmira Steel Co. (D. C.) 109 Fed. 456. This court therefore has priority in the order of hearing of the petitions of bankruptcy. This court has made an adjudication of bankruptcy which involved a finding of all jurisdictional facts. It is therefore required under General Order 6 to "retain jurisdiction over all proceedings until the same is closed": Provided, however (last sentence of General Order 6), this court may transfer the proceedings to the Kentucky court for the convenience of the parties, if the Kentucky court also has jurisdiction. If the Kentucky court has no jurisdiction to adjudicate, then all that can be had in Kentucky is ancillary proceedings. Section 2 (20), Comp. St. § 9586.

Has the District Court of Kentucky jurisdiction to adjudicate the Devonian Mineral Spring Company a bankrupt? Section 2 (1) of the Bankruptcy Act provides that courts of bankruptcy may—

"adjudge persons bankrupt who have had their principal place of business, resided, or had their domicile within their respective territorial jurisdictions for the preceding six months, or the greater portion thereof. * * *"

The only claim made, and the only claim that can be made, in favor of jurisdiction of the Kentucky court, is that the company had its "principal place of business" in that district.

[2] The facts as they appear from the affidavits filed herein—and they disclose little, if any, contradiction of facts upon this phase of

the matter—show that the company was incorporated in 1915 under the laws of Ohio for the purpose of bottling and selling mineral water obtained from a mineral well upon property located at Lorain, Ohio. The principal place of business was named, in the articles of incorporation, as Lorain, Ohio. Its producing plant, whatever there is of it, is at Lorain, Ohio. It has an office there, in which all its books and records are kept, its banking done, and from which all its official business has been conducted. Directors' meetings and stockholders' meetings were held there. The president, Mr. Wilmore, located at the Lorain office, seems to have been the man most active in the company and in carrying on its business.

For some time prior to September, 1920, for perhaps a year and a half, one H. F. Coombs, resident of Kentucky, as representative of the company, had an office at Owensboro, Ky. Mr. Coombs was until September, 1920, vice president, treasurer, and general manager of the company. His duties were primarily the distribution of the mineral water of the company in Kentucky, orders for which would be filled from the plant at Lorain, Ohio. He also sold considerable of the capital stock of the company to citizens of Kentucky. He incurred a large amount of bills for advertising in Kentucky—a large part of the indebtedness of the bankrupt to Kentucky creditors was incurred in this connection, which is evident from the schedules filed herein. Mr. Coombs used stationery designating Owensboro as the "executive office" of the company. The only property belonging to the company in Kentucky is the office equipment of the office in Owensboro. From these facts can it be said that the Western district of Kentucky was the "principal place of business" of the company? I think not.

What is the principal place of business of a corporation must be determined from a consideration of all of the facts; the place fixed in its articles of incorporation, the character of the corporation, its purposes, especially its dominant purpose, the kind of business it is engaged in, where its manufacturing plant and business offices are, its principal and not incidental transactions, in carrying on its business. "The real scene of its activities." "It is the principal place of the principal business." Collier on Bankruptcy (11th Ed.) p. 40; Brandenburg on Bankruptcy (4th Ed.) § 14; Roszell Bros. v. Coal Corp., 235 Fed. 343, 38 Am. Bankr. Rep. 31 (D. C. Ky.); Coal Corp. v. Roszelle, 39 Am. Bankr. Rep. 562, 242 Fed. 243, 155 C. C. A. 83 (6th C. C. A.); Matter of Monarch Oil Corp., 46 Am. Bankr. Rep. 65, 272 Fed. 524 (D. C. Ohio). In Roszell Bros. v. Coal Corp., supra, Judge Cochran discusses the question of "principal business" quite exhaustively. His decision in this case was affirmed by the Circuit Court in Coal Corporation v. Roszelle Bros., supra. This case involved the determination of the principal place of business of a coal mining company. It was held to be where the coal was mined and its productive operations carried on, and not the office in which books were kept and from which the selling was conducted. The Circuit Court says:

"We are impressed that the dominating feature of the bankrupt's business—that which gave it distinctive character—was the mining of coal. As was well said by Judge Cochran, 'It is the production end of his [the mine operator's] business that is the prominent feature and is expressed in his name.

No one ever speaks of a manufacturer or mine operator as a merchant or seller of goods, but always as a manufacturer or mine operator.' Taking into account the entire situation, we are better content with the view that the debtor's principal place of business was the place where these extensive mining operations, as well as the other business mentioned, were carried on, where the maps and original deeds of the company's property were kept in a vault prepared for that purpose, where this large number of company houses and the important commissary stores were maintained (a village of themselves), where the bulk of the bankrupt's property was situated and where suits and liens against it would naturally be enforced (in fact, several personal injury suits were pending when the testimony below was taken), and where its superintendent and manager actually resided, rather than the office in Chattanooga, in which the books were kept, the general guidance of its business effected, and from which the selling was conducted."

In the case before us the company was a mineral spring company; it produced—i. e., secured from mineral wells, and put into shape for sale—mineral water. Then, of course, it set about to sell it. It was not a "sales" company; selling was incidental to its dominant purpose.

[3] It is the rule that, when the articles of incorporation name a place as the principal place of business of a corporation, the burden is upon the petitioning creditors to show it is elsewhere. Collier on Bankruptcy (17th Ed.) 640 and 1193, and cases cited. From a careful consideration of all of the evidence and applying the tests found in the authorities and cases above cited, I am persuaded that the principal place of business of the Devonian Mineral Spring Company was not in Kentucky, but at Lorain, Ohio. This being true, the District Court of Kentucky has not jurisdiction to adjudicate this company bankrupt. There is thus no occasion and no warrant in law for transferring the proceedings to that court. In fact, in the present state of this matter, I would, if I set aside the adjudication here and made an order of transfer, be transferring the proceedings to a court which, if the District Judge took the same view of the law as I do, would later dismiss the entire proceeding and leave the company entirely out of bankruptcy.

[4] Conceding, however, that the District Court of Kentucky has jurisdiction, then what is the condition that confronts us? This court, the domicile of the debtor, has properly proceeded to a hearing and has made an adjudication. Another court also has jurisdiction by reason of the fact that the debtor's principal place of buisness is in the latter jurisdiction. Then, under the law, this court should, if satisfied that it is for the greatest convenience of all parties in interest, transfer these proceedings to the Kentucky court. Is it for the greatest convenience of all the parties in interest that the transfer be made? In my opinion it is not. The "parties in interest" include not only general creditors, but prior and secured creditors as well; also the bankrupt and every other party whose pecuniary interest is affected by the proceedings. Matter of United Button Co. (D. C.) 132 Fed. 378; Id. (D. C.) 13 Am. Bankr. Rep. 454, 137 Fed. 668; In re Sterne & Levi, 26 Am. Bankr. Rep. 259, 263, 190 Fed. 70 (D. C. Del.).

The "greatest convenience" depends upon all the circumstances—proximity of creditors of every kind to the court, proximity to the court of bankrupts and witnesses necessary to proper administration,

the location of assets, and perhaps numerous other factors that appeal to a court as in the interest of an orderly, economical, and efficient administration of the assets. Collier on Bankruptcy (17th Ed.) p. 640.

[5] It may be conceded in this case that the majority in amount and number of general creditors live in Kentucky, and that the majority of stockholders live there, as do many witnesses necessary to the determination of the two claims heretofore mentioned, and yet it seems to me that all other considerations favor retention of jurisdiction in this district. In this district are practically all of the assets of the company, its official headquarters; its books and records are here, and above all there is pending in the common pleas court of Lorain county, a county in this district, an action to foreclose two mortgages, totaling over $10,000, which are alleged to be liens upon what apparently is the bulk of the company's assets—its real property, its plant. This action, having been brought prior to any bankruptcy proceeding, must be tried in the state court. The witnesses who live in Kentucky, and who are alleged to have important testimony to give in connection with these claims, will have to come to the Lorain county common pleas court in any event. Nelson Supply Co. v. Leary, 39 Am. Bankr. Rep. 755, 49 Utah, 493, 164 Pac. 1047; Griffin v. Lenhart, 45 Am. Bankr. Rep. 221, 266 Fed. 671 (4 C. C. A.). A transfer of these bankruptcy proceedings to the Kentucky District Court will not result in promoting their convenience.

From a careful consideration of all of the elements that should enter into an exercise of discretion is granting an order of transfer in the interest of the greatest convenience of all parties in interest, I am constrained to find that the balance is in favor of this jurisdiction.

The petitions of the stockholders and of the creditors for transfer is therefore dismissed. A proper exception may be noted in behalf of each group of petitioners.